**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 9, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

AHMAD R. SHAYESTEH,

Plaintiff-Appellant,

v.

AARON RATY, individually and as an agent of the Drug Enforcement Administration; MARK BACON, individually; RICHARD W. DAYNES, individually and as an Assistant United States Attorney for the District of Utah; PAUL M. WARNER, individually and as the United States Attorney for the District of Utah; STEVE GERARD, individually and as an agent of the Federal Bureau of Investigations; FEDERAL BUREAU OF INVESTIGATION; UNITED STATES DRUG ENFORCEMENT ADMINISTRATION; UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF UTAH; UNITED STATES OF AMERICA,

Defendants-Appellees.

No. 10-4012
(D.C. No. 2:05-CV-00085-TC)
(D. Utah)

---

AHMAD R. SHAYESTEH,

Plaintiff-Appellant,

v.

No. 10-4051
(D.C. No. 2:04-CV-00488-CW)
(D. Utah)

CENTRAL BANK; CENTRAL
BANCORPORATION; GARY
JENSEN; DAVE MCBETH; STEVE
RODEN,

Defendants-Appellees.

UNITED STATES OF AMERICA,

Movant to Intervene.

## ORDER AND JUDGMENT[*]

Before **TYMKOVICH**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and **GORSUCH**, Circuit Judge.

Some time after arresting Ahmad R. Shayesteh on drug charges, federal authorities seized the contents of his safe-deposit box. In these consolidated lawsuits, Mr. Shayesteh claims that the government's seizure was unlawful and that he is entitled to damages from federal law enforcement officers, the bank, and various bank officials. The district court granted summary judgment to the defendants, and we now affirm that decision.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

A

The origins of this case take us back to 1996 when Mr. Shayesteh was convicted in federal district court in Utah on two counts of possession of a controlled substance with intent to distribute.  In connection with that case, Mr. Shayesteh submitted a personal financial statement to the court representing that he owned no assets other than $200 in a bank account and a car worth $3,000, both of which the government seized as part of his arrest.  On the basis of his representations about his financial situation, Mr. Shayesteh was permitted to proceed *in forma pauperis* (*ifp*) in his (ultimately unsuccessful) criminal appeal.

As it turns out, however, Mr. Shayesteh long had a safe-deposit box full of money at the Central Bank in Provo.  In 2002 and after various efforts to locate Mr. Shayesteh proved unsuccessful, the bank deemed his safe-deposit box abandoned, opened it, and found what it thought to be between $70,000 and $80,000 in cash.  The bank contacted the government and explained that Mr. Shayesteh had rented the safe-deposit box years earlier.  After government agents researched his criminal history and ascertained that he was now in federal prison on federal drug charges, the Drug Enforcement Agency (DEA) seized the contents of the box, which DEA agents said amounted to $72,100 in cash.

The government then pursued an *in rem* forfeiture proceeding, arguing the money amounted to proceeds from Mr. Shayesteh's drug trafficking operations

and should be remitted to the government.  In response, Mr. Shayesteh lodged a claim to the money and advanced a number of defenses, including one invoking the Right to Financial Privacy Act of 1978, 12 U.S.C. §§ 3401-3422 (RFPA); he also filed a counter-complaint under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-2680 (FTCA).  In his counter-complaint, Mr. Shayesteh alleged that the box contained $80,000 in cash and $4 million in diamonds, and he asserted that federal agents must have lost or stolen $7,900 in cash and the diamonds.

Ultimately, the district court dismissed Mr. Shayesteh's counter-complaint on the grounds of sovereign immunity and failure to exhaust administrative remedies.  The court also struck his claim to the seized cash because he exhibited bad faith in refusing to comply with discovery requests, and the court entered a judgment of forfeiture in favor of the government.  Mr. Shayesteh appealed but we affirmed.  *See United States v. $72,100 in U.S. Currency*, No. 08-4085, 2009 WL 247837 (10th Cir. Feb. 3, 2009) (unpublished).

B

This finally brings us to Mr. Shayesteh's latest lawsuits.  Mr. Shayesteh filed No. 10-4012 seeking damages from various government officials who were allegedly involved in the seizure of assets from his safe-deposit box.  Only two of the claims in this lawsuit, however, remain contested in this appeal and so require

our resolution: a claim against FBI agent Steve Garrard[1] under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and a RFPA claim against the FBI, the DEA, and the DEA agent who handled Mr. Shayesteh's criminal case, Aaron Raty. At summary judgment, the district court concluded that (a) the *Bivens* claim failed because Mr. Shayesteh had failed to create a triable question of fact over whether Agent Garrard was involved in the seizure of assets from his safe-deposit box; and, (b) the RFPA claim was barred by claim preclusion.

In No. 10-4051, Mr. Shayesteh brought a RFPA claim and a host of state-law claims for damages against Central Bank, its holding company, and various bank employees. Mr. Shayesteh alleged that these entities and individuals bore responsibility for losing the $7,900 in cash and diamonds that, Mr. Shayesteh contends, were stored in his safe-deposit box. Again, however, the district court granted summary judgment against Mr. Shayesteh, this time holding, among other things, that Mr. Shayesteh should be judicially estopped from claiming that the safe-deposit box contained such riches given his earlier representations to the court that he was indigent. On appeal, Mr. Shayesteh again raises only two arguments for reversal, asking us to hold that the district court erred in (a) applying judicial estoppel to his claims; and, (b) permitting discovery

---

[1] Although Agent Garrard's name is spelled "Gerard" in our caption, we use what appears to be the correct spelling in the body of our decision.

of certain documents and denying his motion to strike those documents as exhibits to defendants' motion for summary judgment.

In what follows, we review the district court's summary judgment dispositions in turn. As always we review a grant of summary judgment *de novo*, viewing the evidence and reasonable inferences that can be drawn from that evidence in the light most favorable to Mr. Shayesteh as the non-moving party. Because he proceeds before us *pro se*, we construe Mr. Shayesteh's pleadings liberally. Other applicable standards of review we discuss as they become relevant.

## II

## A

In No. 10-4012, Mr. Shayesteh first takes issue with the district court's conclusion that he failed to come forward with evidence disputing Agent Garrard's declaration that neither he nor any other FBI agent was involved with the safe-deposit box seizure.[2] Mr. Shayesteh argues that a triable question exists about Agent Garrard's participation because the government's own complaint in the forfeiture action alleged the *FBI's* participation in opening his safe-deposit box. But the fact that someone at an agency as large as the FBI may have been involved in the seizure does nothing to call into question *Agent Garrard*'s

---

[2] Mr. Shayesteh argues that Agent Garrard's declaration was not sworn, but he cites to the very statutory provision, 28 U.S.C. § 1746, that permits an unsworn declaration like Agent Garrard's to substitute for a sworn affidavit.

-6-

declaration that he wasn't involved. Simply put, Mr. Shayesteh hasn't come forward with any evidence from which a reasonable fact finder could doubt Agent Garrard's declaration.

Recognizing the difficulty of his position, Mr. Shayesteh replies that the district court should not have granted summary judgment without first permitting him time to conduct discovery about Agent Garrard's role. When a party opposing summary judgment wishes to obtain more time for discovery, however, Fed. R. Civ. P. 56(d) (formerly Rule 56(f)) requires that party to file an affidavit "specifi[ying] [the] reasons [why] it cannot present facts essential to justify its opposition," and this duty requires the moving party to identify "(1) the probable facts not [now] available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment." *Valley Forge Ins. Co. v. Health Care Mgmt.*, 616 F.3d 1086, 1096 (10th Cir. 2010) (internal quotations omitted). Although Mr. Shayesteh included a declaration with his summary judgment opposition and in it requested time for further discovery, he did not comply with these requirements. The district court therefore acted within its discretion in granting summary judgment against Mr. Shayesteh when it did.

B

Separately, Mr. Shayesteh complains the district court erred in holding that his RFPA claims were barred by claim preclusion because Mr. Shayesteh raised and had a fair opportunity to litigate any RFPA claim in the forfeiture suit, which resulted in a final judgment on the merits affirmed by this court. *See Plotner v. AT&T Corp.*, 224 F.3d 1161, 1168 (10th Cir. 2000) (reciting elements of claim preclusion). Before us, Mr. Shayesteh argues that the district court's conclusion is in error for two reasons: the forfeiture proceeding didn't result in a final judgment on the merits because his claims were dismissed as a sanction; in any event, he was denied a full and fair opportunity to present his claims in the prior forfeiture proceeding.

The first of these arguments, however, Mr. Shayesteh disclaimed before the district court and so may not pursue on appeal. *See* D.Ct. Order of Nov. 16, 2009 at 16 (noting that, before the district court, Mr. Shayesteh had "admit[ted] that the forfeiture case resulted in a judgment on the merits"); Plaintiff's Summary Judgment Opposition at 8 (conceding final judgment on the merits existed); *United States v. Olano*, 507 U.S. 725, 733 (1993) (discussing waiver doctrine). The second of these arguments — whether he had a full and fair opportunity to litigate his RFPA claim — Mr. Shayesteh did pursue in the district court. But on this argument he lost there and cannot prevail here. It is undisputed that Mr. Shayesteh alleged a violation of the RFPA in the forfeiture action and had every

chance to litigate the statute's application there. To this, Mr. Shayesteh replies cryptically that a RFPA claim is more likely to succeed in this independent proceeding than it was when raised in connection with a forfeiture action. But Mr. Shayesteh's argument focuses on the wrong question. The pertinent inquiry before us isn't whether, in the forfeiture proceeding, he would've or should've won a RFPA claim but whether he could have raised that claim and had a full and fair opportunity to litigate it there. Mr. Shayesteh has not explained to the district court or this court why he lacked such an opportunity and, while we owe his *pro se* pleadings a liberal construction, we may not invent or advance arguments, even for *pro se* litigants. *See In re Antrobus*, 563 F.3d 1092, 1099 (10th Cir. 2009).

III

A

In No. 10-4051, the district court held that Mr. Shayesteh should be judicially estopped from pursuing claims against the bank and its employees. In those claims, Mr. Shayesteh argued that the bank and its employees lost or stole most of the assets in his safe-deposit box, $7,900 in cash and millions of dollars worth of diamonds. The district court held Mr. Shayesteh should be estopped from pursuing these claims because of his prior representation to the court that he was indigent and therefore entitled to proceed with his direct criminal appeal *in forma pauperis*. In reaching its holding, the district court explained that "[a]llowing Plaintiff to proceed with his present claims, which are founded on the

-9-

allegation that Plaintiff actually held millions of dollars worth of assets in a safe-deposit box at the time he induced the court to allow him to proceed *in forma pauperis*," would reward "precisely the type of fraud on the court which the doctrine of judicial estoppel was designed to address."  D. Ct. Order of Jan. 29, 2010 at 12, 13.

We review a district court's application of judicial estoppel for an abuse of discretion, *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007), and see none here.  Under federal law, there are no "inflexible prerequisites" that must be met or any "exhaustive formula" that can be applied in judicial estoppel cases, but three factors often do inform the analysis:  (1) whether "a party's later position [is] clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (quotation marks omitted).[3]

---

[3]    Contrary to Mr. Shayesteh's argument otherwise, we assess the propriety of judicial estoppel under principles of federal, not Utah, law. *See Eastman*, 493 F.3d at 1156 & n.4 (holding that, after this circuit's adoption of judicial estoppel in *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1068-69 (10th Cir. 2005) federal

(continued...)

All these factors are present here. First, Mr. Shayesteh's assertion of indigence in pursuing his direct criminal appeal is clearly inconsistent with his allegations in this case that he, at the time, possessed millions. Neither, contrary to Mr. Shayesteh's view, is there any requirement under federal principles of judicial estoppel that the inconsistent positions occur in the same or related litigation, or that the parties be identical or related. *See Eastman*, 493 F.3d at 1153, 1159-60 (enforcing judicial estoppel in personal injury action where plaintiff failed to disclose the action as an asset in bankruptcy proceeding where defendants were not creditors). Second, Mr. Shayesteh persuaded the district court to accept his allegation of indigence, so to accept his current allegations in this case would not only create the *perception* that he succeeded in misleading one of the two courts, it would *actually allow* him the benefit of having misled the criminal court. And third, as the district court reasoned, after years of litigation on the subject, Mr. Shayesteh "ha[s] not produced any evidence besides his own self-serving statements" that there was anything more in the safe-deposit box than what the government seized, so "[a]llowing this case to proceed to trial based solely on [his] testimony [otherwise], while overlooking [his] prior contradictory statements which were relied upon by the court, would clearly give

[3](...continued)
principles of judicial estoppel apply to both federal and pendent state-law claims), *abrogating Osborn v. Durant Bank & Trust Co. (In re Osborn)*, 24 F.3d 1199, 1207 & n.11 (1994) (applying state-law principles of judicial estoppel prior to circuit acceptance of the doctrine).

[him] an unfair advantage in this litigation." D. Ct. Order of Jan. 29, 2010, at 12-13.

Even more important than the narrow focus on these factors is the fact that judicial estoppel exists primarily to prevent abuse of the judicial process. And, as the district court rightly explained, permitting Mr. Shayesteh to pursue claims involving assets he concealed from the criminal court would provide no incentive for candor before federal tribunals and would instead only reward dissembling. This case thus implicates the core concern undergirding, and calls out for application of, judicial estoppel doctrine.[4]

B

Finally, Mr. Shayesteh takes issue with the district court's orders granting defendants' motion to compel discovery and refusing to strike two exhibits obtained as a result and attached to defendants' motion for summary judgment — the presentence investigation report (PSR) and the personal financial statement from his criminal case.

---

[4] The district court also concluded that defendants were entitled to summary judgment based on the immunity provided to financial institutions for certain disclosures of financial information under 31 U.S.C. § 5318(g)(3)(A). Defendants claim that this basis for summary judgment pertains to all of Mr. Shayesteh's claims and that Mr. Shayesteh's failure to contest this ground for summary judgment in his opening brief works a dispositive waiver with regard to all claims. Mr. Shayesteh argues that the district court's alternate basis pertains only to his RFPA claim and states that by not contesting it, he intended to waive only that claim on appeal, not his state-law claims. Because we base our affirmance on the district court's conclusion that judicial estoppel bars all of Mr. Shayesteh's claims, we need not resolve this dispute.

Once again, our review here is for an abuse of discretion, *see Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995), and we see none in the district court's conclusions that the documents fell within the scope of its order permitting discovery of Mr. Shayesteh's criminal history, and that DUCrimR 32-1(c) permits the release of PSRs and other confidential information upon court order. As to the motion to strike, Mr. Shayesteh has not identified, nor can we discern, how defendants' use of these documents affected a substantial legal right in this case; none of the court's rulings on appeal here depended on them. *See United States v. Charley*, 189 F.3d 1251, 1270 (10th Cir. 1999). To the extent Mr. Shayesteh claims harm in the continued public availability of the PSR and references to it in defendants' summary judgment motion, there is no indication in the record that he filed a motion to seal. Accordingly, there is nothing for this court to review on that subject.

* * *

The judgments of the district court are affirmed. In addition, in No. 10-4051, we (1) grant appellees' Motion For Leave To File Appellees' Supplemental Brief; (2) deny appellees' motion to strike Mr. Shayesteh's opposition to the filing of their supplemental brief, which is contained in their reply to his opposition; and (3) grant Mr. Shayesteh's application to proceed *ifp* as there is no suggestion that he any longer possesses substantial assets. We remind Mr. Shayesteh that under the Prison Litigation Reform Act, 28 U.S.C.

-13-

§ 1915(b)(1), he is obligated to continue making partial payments of all district court and appellate filing fees until they are paid in full.

Entered for the Court


Neil M. Gorsuch
Circuit Judge